(164 App. Div. 679)

### MARKOWITZ v. LINDEMAN.   (No. 6429.)

(Supreme Court, Appellate Division, First Department.   December 4, 1914.,

1. MUNICIPAL CORPORATIONS (§ 706*)—INJURIES TO PERSONS ON STREET—ACTIONS—EVIDENCE—JURY QUESTION.

   In an action by a street sweeper, who claimed to have been injured by an automobile, the questions of whether he was in fact struck, and whether the accident resulted from the negligence of the motorist, or his own contributory negligence, *held* for the jury.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

2 DAMAGES (§ 185*)—INJURIES TO PERSONS ON STREETS—ACTIONS—EVIDENCE.

   In a personal injury action by a street sweeper, run down by an automobile, an award of $1 damages *held* not contrary to the weight of the evidence.

   [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 503–508; Dec. Dig. § 185.*]

   Dowling, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Herman Markowitz against Beatrice S. Lindeman (first name "Beatrice" fictitious, real name being unknown). From an order denying his motion to set aside a verdict on the ground of inadequacy of damages, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Bernard H. Bernstein, of New York City, for appellant.

Joseph F. Murray, of New York City, for respondent.

LAUGHLIN, J. The plaintiff was in the employ of the department of streets of the city of New York as a street cleaner, and he claims that, while engaged in the performance of his duties in West 125th street, between Amsterdam avenue and Broadway, on the 11th day of January, 1913, he was run down by an electric brougham driven by the defendant, and sustained substantial injuries.

The only question presented by the appeal relates to the sufficiency of the damages awarded by the jury. There is medical testimony in the case tending to support the plaintiff's claim that after the accident he was suffering from some disability which, if caused by the negligence of the defendant, would have entitled him to a larger verdict; but whether the abnormal physical conditions of which he complains resulted from the accident on the occasion in question depends, I think, entirely upon the testimony of the plaintiff, which was not corroborated. He testified that the accident occurred between 11 and 12 in the forenoon; that he was working on the southerly side of the carriageway, about three or four feet from the curb, and between it and his can carrier; that he was using a shovel and broom, and emptying the sweepings into a large can on a can carrier on wheels, which he moved about with him; that he was bent over, picking up a pile of sweepings, when he was struck "right in my left part, right here (indicating), this side"; that he did not see the vehicle approaching, but that the defendant stopped after the accident, and gave him her card, and asked if he was seriously hurt, to which he made no reply; that he was able to and did walk, but says, "I had my pains," after the accident, and reported to his section foreman, and then went home, traveling by street car part of the way; that his wife called Dr. Mencke, and that after that he called on Dr. Kornblum, who examined and treated him; that he went to a hospital for deformities and joint diseases in 124th street and had an X-ray picture taken, and that after that, and on the 18th of January, he went to Mt. Sinai Hospital, and remained there until the 2d of February, and was subsequently treated at a dispensary for a time, and then went to the Harlem Hospital and remained a week, and later went to Mt. Sinai Hospital for a week and received treatment; that the treatment he received was for an internal condition, and consisted of injections and applications of electricity; that during this time he was able to walk about, but used crutches three or four months, and suffered pain; that he left the Mt. Sinai Hospital the last time on the 24th of November, and called there again on the 2d of November; that during this time the only work he did was light work for the city

for about six weeks from July 20th to September 4th; and that in part of his left leg he had no sensation of feeling at the time of the trial. This is the substance of his direct testimony relating to the accident and to the injuries. He said nothing on his direct examination with respect to having been knocked down, and it is highly improbable that such an important matter would have been omitted, if he had informed his counsel that he had been precipitated to the pavement by the collision. On cross-examination, however, on being asked if he was knocked down, he answered that he was.

One Cummings, called for plaintiff, testified that he was returning from Amsterdam avenue, presumably on 125th street, although he does not state the fact, and that his attention was attracted by a noise, and he looked and saw plaintiff lying on his side on the street and groaning, and he and another man picked him up and helped him to the curb, and then plaintiff walked away. One Bell, a colored minister and teacher 78 years old, who was with Cummings, testified that he saw plaintiff in the act of rising to dump sweepings into the can "when he got struck on the left side with the automobile"; that the plaintiff fell and threw both hands out like that, and fell flat upon his stomach (illustrating)"; and in answer to a question as to how long he remained with the plaintiff, he said, "Why, I judge about a minute, after he got up;" that an officer then arrived, and Cummings "went his way"; and that he had known Cummings between 15 and 18 years. One Egan testified that he was going east on 125th street; that he heard the rattle of a can and somebody halloaing, and turned around and saw two men picking plaintiff up; but he did not see whether or not plaintiff was struck by anything, and he did not go back to the scene of the accident.

The physician first called to attend plaintiff did not testify, and no explanation was offered for the failure to call him. Dr. Kornblum was called by plaintiff, and testified that he first examined plaintiff at his office on the 13th of January, 1913, which would be two days after the accident; that he found no mark, bruise, abrasion, black and blue spot, or other evidence on the surface of plaintiff's body to indicate an injury; that there was a sagging of the left buttock, and on examining plaintiff rectally he found an abnormal condition, the cause and exact nature of which he was unable to discover, but that it might have been caused by "an enlarged prostate, or it might be an extravasation of blood in that part," and might have existed "for some time"; that he found points of tenderness "at the sacrum and at the left part of the hip," and found evidence of partial paralysis of some of the muscles, and lack of sensation in the back part of the leg, and he found a reaction of the muscles that could not be stimulated; that on the 17th of January he advised plaintiff to go to a hospital to have an X-ray picture taken; that his diagnosis at the time of his first examination was "inflammation of the nerve and a possible fracture of the pelvis; what part of the pelvis I did not know"; that with the exception of this abnormal rectal condition, and the reaction of the muscles, and the condition of the left buttock, the complaints of the plaintiff depended entirely upon his truthfulness. A medical examiner for a fraternal society testified that he examined plaintiff for admission thereto about three

weeks prior to the occasion in question, and apparently found nothing that would bar plaintiff from admission; but it appears that his examination was superficial, and would not have disclosed the conditions of which plaintiff complained, and he could not and did not testify that none of those conditions existed or were present when he examined plaintiff. Two other doctors called by plaintiff, one who examined him at the Mt. Sinai Hospital and another who examined him for the purposes of the trial, gave testimony corroborative of that given by Dr. Kornblum with respect to plaintiff's condition, and one of them said that an X-ray plate should be had, and testified that he had a fracture of the sacrum and traumatic neuritis, which is an inflammation of the nerve due to injury caused by violence; but neither of them professed to be able to state how long these conditions had existed, or what caused them, excepting that one of them said, in answer to a hypothetical question, that they might have been caused by such an accident. One of them also testified that plaintiff told him that he was struck in the back by an automobile, *but did not fall* when he was struck, or experience any pain until five or ten minutes after, when he felt severe pain in his back and down his thigh, and was just able to hobble home.

The defendant testified that the vehicle, which was inclosed by glass, did not strike the plaintiff, and that "he did not fall"; that he was not in front of her vehicle, but "was standing on the right of the carrier, which was facing directly north, and he was standing at one end of it"; that she was sitting on the left-hand side of the automobile, and had another woman and two children with her, and was going slowly down a slight grade with the power off and her foot on the brake, and a street car was passing on her left; that she "heard a rattle," and looked and saw that she "had touched this man's cart and upset all his implements, brooms, whatever it was"; that she thought the noise was caused by the implements that were standing on or against the can, which must have fallen, because the can was still standing; that she stopped the car at once within a few feet of the plaintiff, who was standing there, and asked if he was hurt, and he said that he was not; that several children who had been playing there crowded around, creating some confusion, and, thinking that plaintiff was a poor man and that she might have broken some of his implements, she requested boys to ask if he wanted "some money," and received an answer in the negative, and plaintiff came up and said that he was not hurt, and she gave him her card and was about to pass on, when a policeman arrived and asked her name, and she stated that she had given her card to the plaintiff, and that no one was hurt, and she then proceeded on her way. Mrs. Levinson, who was riding with the defendant, and who was sitting on the right-hand side, facing forward, testified positively that the vehicle merely grazed the can carrier, without tipping it over, but that the tools clattered to the ground, and that plaintiff was not thrown down, but was standing in the street "next to his cart." Another witness, who was standing on a veranda opposite the place of the accident, testified that she saw the vehicle strike the can carrier and tip it over, but that the plaintiff, who was standing between the can carrier and the curb, did not fall, and when she looked around again she saw him standing there in the street.

[1] This is the substance of the material evidence bearing upon the question as to whether the plaintiff was injured, and the nature and extent of the injuries. It will be seen that, if the jury believed the testimony of the defendant and her two witnesses, they were justified in finding that the plaintiff was not struck or injured, either directly or indirectly, by the brougham; and, on the other hand, if they believed the testimony of the plaintiff and his witnesses, they were warranted in finding that he was either struck by the vehicle, or by the can carrier, or some of the tools, and knocked down. The circumstances were such, however, that it was for the jury to say, if they found that the plaintiff fell or appeared to have been thrown, whether it was caused by direct contact with the vehicle, the can carrier, or tools, or whether it may not have resulted from being startled by the noise resulting from contact between the vehicle and the can carrier while he was in a stooping position. It must be assumed that the jury found in favor of the plaintiff on the issues of negligence and contributory negligence, and that his rights were trespassed upon by his being struck, directly or indirectly, by the vehicle; but the jury may have found that he was not thrown down, or, at least, not with such force that he must necessarily have sustained a physical injury. The verdict shows that the jury were of opinion that he failed to establish by evidence satisfactory to them that he had sustained more than nominal damages. If it be assumed that the jury found he was knocked down—and it is to be borne in mind that they were not bound so to find, and may not have so found—it was still for them to determine to what extent, if any, he was injured, and that it was not seriously controverted that he immediately arose, or, if assisted to his feet, was able to stand alone, and walked away unaided.

[2] If there was nothing to impeach the testimony of the plaintiff, it might well be argued that a verdict wholly rejecting it with respect to the damages is against the weight of the evidence, for it appears that he immediately quit work and soon sought medical aid, and that he was found suffering from abnormal conditions, which might have been caused by the accident, if it happened as described by him and his witnesses. But there is evidence in the record which would very properly lead jurors to weigh the plaintiff's testimony with respect to his injuries with great caution, if not to reject it altogether, and it cannot be said that they were bound to accept it, and in the circumstances of this case the denial of the motion by the trial judge is entitled to controlling weight. Plaintiff was 39 years of age at the time of the trial, and he testified on cross-examination that he was strong and healthy before the accident, and then, in answer to a question as to whether he had ever had another accident, he answered, "No, sir; I had an accident and ruptured." He then admitted that he was in a hospital on account of the rupture from the 20th of May until the 8th of July, 1912, and that the rupture was caused in assisting in lifting a heavy can onto a wagon, evidently in the street-cleaning service. He then testified that, otherwise than that, he was never injured, and never before was a witness, and was a strong and healthy man in every way, and in good condition, and never had a doctor. After so testify-

ing, when confronted with an accurate statement of the facts, he admitted that on the 1st day of March, 1912, he had an accident while riding on the rear platform of a Third Avenue car by being struck by a pole at the side of the track, and sustained injuries to the back of the head, and that he used crutches and a cane after that accident, and negotiated with the railway company for a settlement, and was offered $25, and returned to his work in four days; but on redirect examination he denied that he had ever used crutches or a cane before the accident on account of which he now sues. Again, on being confronted with the facts, he admitted that on the 19th of November, 1907, while driving a horse and vehicle along West 116th street, he was thrown from the wagon and sustained injuries on the front of his body on the right side, and was taken to a hospital and treated therefor, and made a claim against the receivers of the New York City Railways Company therefor, and verified a complaint, and testified in court, and claimed in the complaint that he had suffered from the accident, among other things, nervousness of a "permanent and lasting character," and that he had a doctor at that time who treated him for the injuries; but he claimed on this trial that those injuries were "not serious." In July, 1912, he brought an action against his wife for separation, and he was asked if he did not allege that she kicked him in the stomach and so injured him that he was unable to work; but after some discussion between the court and counsel the question was not pressed. Subsequent to this accident the plaintiff was retired from the municipal service on a pension of $25 a month. Prior to such pension he was examined by physicians in behalf of the city, and although he admitted that, prior to the accident in question, he had been treated *four different times at different institutions for injuries sustained,* he failed to inform the physicians with respect thereto, and assigns as a reason for not doing so that he was not asked. A witness who lived in the same apartment house with the plaintiff in the year 1912, before this accident, and was janitress thereof, and saw him frequently, testified that he used crutches during that year. Two other witnesses testified that before the accident in question plaintiff walked slowly, with a shuffling gait, and dragged his feet as if there was something the matter with him. There is no evidence, other than plaintiff's own testimony, with respect to the nature or effect of the injuries which he sustained on the other occasions to which reference has been made. Since the extent of the injuries and the amount of damages caused by the accident in question rested on the testimony of the plaintiff, and his credibility was seriously impaired, I am of opinion that the order denying the motion to set aside the verdict as inadequate should be affirmed.

It follows that the order should be affirmed, with costs.

INGRAHAM, P. J., and McLAUGHLIN and HOTCHKISS, JJ., concur.

DOWLING, J. I dissent, upon the ground that plaintiff, who was found by the verdict of the jury to have been entitled to a recovery, proved actual damage to have been sustained by him in excess of the nominal recovery.